UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HANS THOMAS,

    Petitioner,                          Civil No. 2:08-CV-14707
                                          HONORABLE ARTHUR J. TARNOW
v.                                       UNITED STATES DISTRICT JUDGE

NICK J. LUDWICK,

    Respondent,
_____/

## OPINION AND ORDER THE DENYING PETITION FOR WRIT OF HABEAS CORPUS AND GRANTING A CERTIFICATE OF APPEALABILITY AND LEAVE TO APPEAL IN FORMA PAUPERIS

Hans Thomas, ("petitioner"), confined at the St. Louis Correctional Facility in St. Louis, Michigan, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, in which he challenges his conviction for first-degree felony murder, M.C.L.A. 750.316b; armed robbery, M.C.L.A. 750.529; first-degree home invasion, M.C.L.A. 750.110a(2); felon in possession of a firearm, M.C.L.A. 750.224f; and felony firearm, M.C.L.A. 750.227b. For the reasons stated below, the petition for writ of habeas corpus is **DENIED**. The Court will issue petitioner a certificate of appealability and an application to proceed on appeal *in forma pauperis.*

### I. Background

Petitioner was convicted of the above offenses following a jury trial in the Wayne County Circuit Court, in which he was tried jointly with co-defendants Timothy Shepard and Lamar Roberts. This Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009):

1

This case arises out of the murder of Sherryfield Abercrombie and an armed robbery at the Southport Apartments in Van Buren Township. In the early morning of November 5, 2002, Van Buren police officers were called to an apartment in Southport that was occupied by Pauline Jackson. Jackson reported that three men entered her apartment, one man who wore a mask pointed a gun at her, the men locked her and her brother in a bathroom, and stole some money. Jackson also told the officers that she was unable to reach her boyfriend, Abercrombie, by telephone. When the police left Jackson's apartment, one officer spotted Abercrombie's van elsewhere in the complex. The officers found Abercrombie inside and a pathologist testified that Abercrombie died from two bullet wounds to the head, fired at close range.

The trial court conducted a jury trial in March 2003, but the proceedings ended in a mistrial because the jury could not reach a unanimous verdict. At defendants' retrial in September 2003, evidence revealed that Abercrombie was a drug dealer and that he exchanged several telephone calls with Roberts and Thomas just before his murder. Jackson also admitted at trial that, in addition to cash, the three men who entered her apartment stole some of Abercrombie's inventory of marijuana and cocaine.

At trial, Jackson recalled that one of the robbers wore a gorilla or monkey mask and that another man held a yellow baby blanket over his face. According to Jackson, the third man wore a caramel hooded sweatshirt that was tightly tied. She testified that, though she could not see each robber's face in its entirety, the gunman who wore the mask was the same height and build as Thomas and that they have similar skin color and hair. She also testified that the two other robbers resembled Shepard and Roberts. Jackson remembered that, in addition to the drugs and money that the robbers stole, the men took some new shoes, including a pair of gray and white Air Jordan tennis shoes.

One of the prosecutor's key witnesses in the case was Jerry Bigham, who testified that he saw Roberts both before and after the robbery and murder. According to Bigham, on November 4, 2002, he and Roberts spent the day together at Bigham's apartment, playing dominoes and smoking marijuana. At some point, Shepard arrived at Bigham's apartment and Roberts left with him. On the morning of November 5, 2002, Roberts called Bigham and asked him to meet him at a Motel 6 to smoke marijuana. According to Bigham, when he arrived, Roberts was wearing a towel and a pair of pants. Roberts asked Bigham to drive him to his brother's house so he could get a pair of underwear. Roberts explained that his clothes had blood on them because he, Shepard, and Thomas committed a robbery the night before,

2

during which a victim was injured. According to Bigham, Roberts expressed fear that Shepard would kill him because he knew that Shepard injured someone during the robbery. Bigham also recalled that Roberts said someone wore a mask during the robbery.

Bigham testified that, at first, Roberts told him that they committed the robbery in Southfield and that the victim was stabbed. However, Bigham and Roberts watched a local newscast that reported a robbery and murder of Abercrombie at the Southport Apartments and Roberts appeared to be worried. Bigham admitted that Roberts denied any involvement in the crime, but he also testified that Roberts gave him a new pair of gray Air Jordan tennis shoes, which Pauline Jackson later testified were stolen from her apartment during the home invasion. Furthermore, cellular phone records showed that, around the time of Abercrombie's murder, Roberts, Thomas and Abercrombie made numerous calls to one another.

Roberts testified on his own behalf after the jury deliberated the charges against Shepard and Thomas. Roberts admitted that he participated in the robbery and murder and he again implicated Shepard and Thomas in the crimes. However, he maintained that Shepard and Thomas forced him to take part in the crimes at gunpoint.

*People v. Thomas,* No. 257557, * 2-3 (Mich.Ct.App. November 1, 2005). Petitioner's conviction was affirmed on appeal. [1] *Id., lv. den.* 480 Mich. 928, 740 N.W.2d 297 (2007). Additional facts will be discussed when addressing petitioner's claims. Petitioner seeks a writ of habeas corpus on the following grounds:

I. Petitioner was denied his state and federal constitutional rights to confrontation and a fair trial where co-defendant Lamar Roberts' collateral hearsay statement was admitted as substantive evidence against him without an adequate indicia of reliability or firmly grounded in a hearsay exception.

II. The trial court's failure to grant a mistrial after a prosecution witness testified about other bad acts committed by all three defendants in the joint trial denied petitioner a fair trial.

---

[1] Petitioner's appeal of right was consolidated with his two co-defendants' appeals.

III. Petitioner was denied his constitutional right to confrontation and fair and impartial jury trial where the court severed co-defendant Lamar Roberts' case at the end of the People's case because the defenses were antagonistic. Trial counsel's failure to object or request a mistrial based on this erroneous severance constitutes ineffective assistance of counsel.

IV. There was insufficient evidence as a matter of law to establish Petitioner's convictions for felony murder as a principal or aider and abettor as required by the due process clause.

V. There was insufficient evidence as a matter of law to establish Petitioner's conviction for armed robbery and home invasion as either a principal or as an aider and abettor as required by the due process clauses in the federal and state constitutions.

VI. The trial court denied petitioner of a fair trial where she refused to give a requested lesser included instruction on murder in the second degree to the felony murder charge.

VII. The trial court abused its discretion by denying petitioner's motion for new trial where the verdict was against the great weight of the evidence and resulted in a miscarriage of justice.

VIII. The cumulative effect of the foregoing errors denied petitioner of a fair trial in violation of due process of law and requires reversal.

## II. Standard of Review

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

4

*Thomas v. Ludwick,* 2:08-CV-14707

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

### III.  Discussion

**A.  Claims # 1 and # 3.  The Confrontation Clause/ineffective assistance of counsel claims.**

The Court will consolidate petitioner's two Confrontation Clause claims. The Court will also discuss petitioner's related ineffective assistance of counsel claim together with his confrontation claims.

Petitioner first claims that that the trial court violated his right to confrontation when it permitted co-defendant Lamar Roberts' statement to Jerry Bigham about petitioner's role in the crimes to be admitted into evidence.

The Michigan Court of Appeals ruled that Roberts' remarks to Bigham did not violate the Sixth Amendment right to confrontation because they did not amount to a testimonial statement:

5

*Thomas v. Ludwick,* 2:08-CV-14707

> Here, Roberts' statement to Bigham regarding the murder and robbery does not constitute a testimonial statement for several reasons: (1) Roberts made the statement to a close friend who was completely uninvolved in the offense, not to a government employee, (2) Roberts made the statement voluntarily and without prompting, (3) Roberts' statement cannot reasonably be construed as "[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact." Further, the statement is far more akin to a casual remark to an acquaintance than a formal statement to government officers. The statement also does not fall, even broadly, under any of the guidelines set forth in *Crawford*: Roberts did not make a statement in an affidavit, custodial examination, or as testimony in a prior proceeding. Moreover, because he made the statement to a good friend, and implicated himself and his codefendants in the crime, it is unlikely that Roberts believed that the statement would be available for use at a later trial. Accordingly, that Shepard did not have an opportunity to cross-examine Roberts did not render Bigham's testimony inadmissible under the Sixth Amendment.
>
> *People v. Shepard,* No. 251742, * 4 (Mich.Ct.App. November 1, 2005).

Out of court statements that are testimonial in nature are barred by the Sixth Amendment Confrontation Clause unless the witness is unavailable and the defendant has had a prior opportunity to cross-examine the witness, regardless of whether such statements are deemed reliable by the court. *See Crawford v. Washington,* 541 U.S. 36 (2004). However, the Confrontation Clause is not implicated, and thus does not need not be considered, when non-testimonial hearsay is at issue. *See Davis v. Washington*, 547 U. S. 813, 823-26 (2006); *See also Desai v. Booker,* 538 F.3d 424, 425-26 (6th Cir. 2008). Testimonial statements do not include remarks made to family members or acquaintances. *Crawford,* 541 U.S. at 51-52, 56. In holding that the Sixth Amendment right to confrontation does not apply to non-testimonial statements, the Supreme Court stated:

> "The text of the Confrontation Clause reflects this focus [on testimonial hearsay]. It applies to 'witnesses' against the accused-in other words, those

who 'bear testimony.' 1 N. Webster, An American Dictionary of *824 the English Language (1828). 'Testimony,' in turn, is typically 'a solemn declaration or affirmation made for the purpose of establishing or proving some fact.' *Ibid.* An accuser who makes a formal statement to government officers bears testimony in a sense that a person who makes a casual remark to an acquaintance does not."
*Davis,* 547 U.S. at 823-24 (*quoting Crawford,* 541 U.S., at 51).

Lamar Roberts' statement to Jerry Bigham did not qualify as a testimonial statement covered by the Confrontation Clause because it was a casual remark made to a friend and not one made to law enforcement. *See Deshai,* 538 F. 3d at 427; *See also Jackson v. Renico,* 179 Fed. Appx. 249, 255 (6th Cir. 2006). Petitioner is not entitled to habeas relief on his first claim.

In his third claim, petitioner contends that his right to confrontation was violated when the trial court severed co-defendant Roberts' case from petitioner's case at the end of the prosecution's proofs and permitted petitioner's case to go to the jury without the jury first hearing Roberts' testimony. The trial court severed the cases at the end of the prosecution's proofs after determining that Roberts' testimony would be directly antagonistic to petitioner's defense at trial. Petitioner claims that this untimely severance prevented him from cross-examining Roberts.

Petitioner has failed to show that the trial court's decision to sever Roberts' case at the conclusion of the prosecutor's case violated his right to confrontation, because Roberts never testified before the jury prior to them deliberating and reaching a verdict in petitioner's case. There is no right under the Sixth Amendment to confront a witness who does not offer testimony or evidence against a defendant. *See U.S. v. Porter,* 764 F. 2d 1, 9 (1st Cir. 1985); *Shuler v. Wainwright*, 491 F. 2d 1213, 1224 (5th Cir. 1974); U.

7

*Thomas v. Ludwick,* 2:08-CV-14707

*S. ex rel. Meadows v. State of N. Y.*, 426 F. 2d 1176, 1184 (2nd Cir. 1970). Petitioner's inability to question Roberts, who did not testify against petitioner at his trial, did not violate petitioner's Sixth Amendment right to confront adverse witnesses. *See Garcia v. Bravo,* 199 Fed. Appx. 692, 694 (10th Cir. 2006).

Petitioner further claims that counsel was ineffective for failing to object to the untimely severance of his case from Roberts' case. To show that he was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two prong test. First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id.* In other words, petitioner must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. *Strickland,* 466 U.S. at 689. Second, the defendant must show that such performance prejudiced his defense. *Id.*

Petitioner's defense at trial was that he did not participate in the crime. By contrast, during his testimony in the severed case, Roberts testified that Shepard and petitioner not only participated in the crimes, but actually forced Roberts to participate at gunpoint. In light of the fact that Roberts "pointed the finger" at petitioner, trial counsel's failure to object to the severance so as to prevent Roberts from testifying before the jury prior to them deliberating in petitioner's case was sound trial strategy.

*See e.g. Robbins v. Mitchell,* 47 Fed. Appx. 380, 385 (6th Cir. 2002). Defense counsel's failure to have petitioner's co-defendant testify before his jury was therefore not ineffective assistance, where it was highly doubtful that his testimony would have enured to petitioner's benefit. *See Wickliffe v. Farley,* 809 F. Supp. 618, 622 (N.D. Ind. 1992). Petitioner is not entitled to habeas relief on his third claim.

**B. Claim # 2. The mistrial claim.**

Petitioner next contends that the trial court should have declared a mistrial after Jerry Bigham testified that he knew that petitioner "used to be a big drug dealer" and made similar comments about the co-defendants.

In rejecting this claim, the Michigan Court of Appeals ruled that Bigham's comments were not grounds for declaring a mistrial because they were not elicited by the prosecutor's questions and the remarks were volunteered, unresponsive answers to appropriate questions. The Michigan Court of Appeals further noted that the trial court immediately struck the comments from the record and instructed the jury to disregard them. *People v. Shepard,* No. 251742, * 5.

A trial court has the discretion to grant or deny a motion for mistrial in the absence of a showing of manifest necessity. *Walls v. Konteh,* 490 F. 3d 432, 436 (6th Cir. 2007); *Clemmons v. Sowders*, 34 F 3d 352, 354-55 (6th Cir. 1994).

Bigham's comment about petitioner being a drug dealer did not render the trial fundamentally unfair, where the remark was unsolicited, it was made in response to a proper line of questioning by the prosecutor, and there was no evidence of the prosecution's bad faith. *See Zuern v. Tate*, 336 F.3d 478, 485-86 (6th Cir. 2003).

Because Bigham's brief remark about petitioner being a drug dealer was unsolicited by the prosecutor and not used by the prosecutor, the failure to declare a mistrial did not deprive petitioner of a fair trial, particularly when this remark was a small part of the evidence against petitioner. *See U.S. v. Martinez,* 430 F. 3d 317, 337 (6th Cir. 2005).

### C. Claims # 4, 5, and 7. The sufficiency of evidence/great weight of the evidence claims.

The Court will consolidate petitioner's fourth, fifth, and seventh claims. In his fourth and fifth claims, petitioner claims that there was insufficient evidence to convict him of these offenses. In his seventh claim, petitioner contends that the verdict went against the great weight of the evidence.

Taking petitioner's seventh claim first, a federal habeas court has no power to grant habeas relief on the ground that a state conviction is against the great weight of the evidence. *Cukaj v. Warren,* 305 F. Supp. 2d 789, 796 (E.D. Mich. 2004); *Dell v. Straub,* 194 F. Supp. 2d 629, 648 (E.D. Mich. 2002); *See also Artis v. Collins,* 14 Fed. Appx. 387 (6th Cir. 2001)(declining to grant certificate of appealability to habeas petitioner on claim that jury's verdict was against the manifest weight of the evidence). A claim that a verdict went against the great weight of the evidence is not of constitutional dimension, for habeas corpus purposes, unless the record is so devoid of evidentiary support that a due process issue is raised. *Cukaj,* 305 F. Supp. 2d at 796; *See also Crenshaw v. Renico*, 261 F. Supp. 2d 826, 834 (E.D. Mich. 2003). The test for habeas relief is not whether the verdict was against the great weight of the evidence, but whether there was any evidence to support it. *Dell,* 194 F. Supp. 2d at

648. As long as there is sufficient evidence to convict petitioner of these crimes, the fact that the verdict may have gone against the great weight of the evidence would not entitle him to habeas relief. *Id.*

In his fourth claim, petitioner contends that there was insufficient evidence to establish that he participated in the felony murder. In his fifth claim, petitioner contends that there was insufficient evidence to establish that the crimes of armed robbery and first-degree home invasion had been committed, so as to support a conviction for felony murder.

A habeas court reviews claims that the evidence at trial was insufficient for a conviction by asking whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Scott v. Mitchell*, 209 F. 3d 854, 885 (6th Cir. 2000)(*citing to Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). Moreover, in reviewing a state court's application of the *Jackson* standard, a federal habeas court is required to determine whether the state court's application of the law in reviewing a sufficiency of evidence claim was reasonable. *See Tucker v. Palmer,* 541 F. 3d 652, 666 (6th Cir. 2008); *cert. den.* 130 S. Ct. 109 (2009)(citing 28 U.S.C. § 2254(d)(1)). Therefore, in reviewing petitioner's sufficiency of evidence claim, the question for this Court is whether the Michigan Court of Appeals' application of the *Jackson* standard was reasonable. *Id.* Moreover, the *Jackson* standard must be applied "with explicit reference to the substantive elements of the criminal offense as defined by state law."

*Thomas v. Ludwick,* 2:08-CV-14707

*Adams v. Smith,* 280 F. Supp. 2d 704, 714 (E.D. Mich. 2003) (*quoting Jackson,* 443 U.S. at 324, n. 16).

Under Michigan law, the elements of first-degree felony murder are:

(1) the killing of a human being;
(2) with an intent to kill, to do great bodily harm, or to create a high risk of death or great bodily harm with knowledge that death or great bodily harm is the probable result (i.e., malice);
(3) while committing, attempting to commit, or assisting in the commission of one of the felonies enumerated in the felony murder statute.
*Matthews v. Abramajtys,* 319 F. 3d 780, 789 (6th Cir. 2003)(*citing* to *People v. Carines*, 460 Mich. 750, 759; 597 N.W. 2d 130 (1999)).

To support a finding under Michigan law that a defendant aided and abetted in the commission of a crime, the prosecutor must show that:

1. the crime charged was committed by the defendant or some other person;
2. the defendant performed acts or gave encouragement that assisted the commission of the crime; and
3. the defendant intended the commission of the crime or had knowledge that the principal intended its commission at the time he gave aid and encouragement.
*Long v. Stovall,* 450 F. Supp. 2d 746, 753 (E.D. Mich. 2006)(*citing Carines*, 460 Mich. at 757-58).

Under Michigan law, to convict a defendant of felony murder under an aiding and abetting theory, the prosecutor must show that someone killed the victim during the underlying predicate felony, that the defendant assisted that person in killing the victim, and that the defendant either intended to commit the crime or he knew when he gave the assistance that the other person intended to commit the crime. *See Meade v.*

*Lavigne,* 265 F. Supp. 2d 849, 858 (E.D. Mich. 2003)(citing *People v. Smielewski*, 235 Mich. App. 196, 207; 596 N.W. 2d 636, 642 (1999)).

The elements of armed robbery under Michigan law are: (1) an assault, and (2) a felonious taking of property from the victim's presence or person, (3) while the defendant is armed with a weapon described in the statute. *See Lovely v. Jackson,* 337 F. Supp. 2d 969, 977 (E.D. Mich. 2004)(citing M.C.L.A. 750.529; *People v. Allen*, 201 Mich. App. 98, 100; 505 N.W. 2d 869 (1993)).

M.C.L.A. 750.110a(2) states that:

A person who breaks and enters a dwelling with intent to commit a felony or a larceny in the dwelling or a person who enters a dwelling without permission with intent to commit a felony or a larceny in the dwelling is guilty of home invasion in the first degree if at any time while the person is entering, present in, or exiting the dwelling either of the following circumstances exists:

(a) The person is armed with a dangerous weapon.
(b) Another person is lawfully present in the dwelling.

Michigan's first-degree home invasion statute includes all of the elements of the burglary of a dwelling, but also requires that the defendant be armed with a dangerous weapon and/or that the dwelling be occupied. *See Johnson v. Warren,* 344 F. Supp. 2d 1081, 1093 (E.D. Mich. 2004)(*citing United States v. Garcia-Serrano,* 107 Fed. Appx. 495, 496-97 (6th Cir. 2004)).

Petitioner first contends that there was insufficient evidence to establish that he participated in these crimes. Pauline Jackson testified at trial that the gunman who wore the mask was the same height and build as petitioner and had similar skin color and hair. Jackson testified that she could see the back of the masked intruder's head

13

and saw rolls on his neck and head area. In court, Jackson looked at the back of petitioner's head and stated that it appeared to look the same as the masked intruder's head, although petitioner had more hair. Jackson nonetheless stated that she could still see the same "indent" on petitioner's head. Jerry Bigham testified that co-defendant Roberts told him that he, Shepard, and Thomas had committed a robbery the night before, during which a victim was injured. Bigham testified that although Roberts inititially told him that the robbery and murder happened in Southfield, Roberts looked worried after the two men watched a local newscast that reported the robbery and murder of Abercrombie at the Southport Apartments. Finally, cellular phone records showed that around the time of Abercrombie's murder, Roberts, petitioner, and Abercrombie made numerous calls to one another.

The law does not require that the identity of a defendant be established by an eyewitness. Instead, the identity of a defendant can be inferred through circumstantial evidence. *Dell,* 194 F. Supp. 2d at 648 (*citing United States v. Kwong,* 14 F. 3d 189, 193 (2nd Cir. 1994)). The circumstantial evidence in this case was sufficient for a rational trier of fact to determine that petitioner participated in these offenses.

The evidence was also sufficient for a rational trier of fact to find petitioner guilty of felony murder, even if he were not the actual shooter. A number of cases have held that a defendant's participation in an armed robbery, while either he or his co-defendants were armed with a loaded firearm, manifested a wanton and reckless disregard that death or serious bodily injury could occur, to support a finding that the defendant acted with malice aforethought, so as to support a conviction for felony-

murder on an aiding and abetting theory. *See Hill v. Hofbauer,* 337 F. 3d 706, 719-20 (6th Cir. 2003)(intent for felony murder "can be inferred from the aider and abettor's knowledge that his cohort possesses a weapon."). Petitioner's participation in these crimes, either while armed with a weapon or knowing that his co-defendants were armed with weapons, was sufficient evidence to establish that he aided and abetted in the felony murder.

Petitioner further contends that there was insufficient evidence to show that the armed robbery and the home invasion were contemporaneous with Abercrombie's killing, in order to support his felony murder conviction. The felony murder doctrine in Michigan requires that a defendant intended to commit the underlying felony at the time that the homicide was committed. *People v. Brannon,* 194 Mich. App. 121, 125; 486 N.W. 2d 83 (1992). The felony murder doctrine is inapplicable if the intent to steal property is not formed until after the homicide is committed. *Id.* However, "It is not necessary that the murder be contemporaneous with the enumerated felony. The statute requires only that the defendant intended to commit the underlying felony at the time the homicide occurred." *Id.* Evidence that a defendant committed a larceny immediately subsequent to the assault is sufficient evidence from which a jury could infer that the defendant possessed an intent to commit the larceny at the time of the homicide. *See People v. Vaughn,* 128 Mich. App. 270, 273-74; 340 N.W. 2d 310 (1983).

The evidence at trial established that petitioner and his co-defendants killed the victim, grabbed the keys to his apartment, and used them to gain access to the

15

*Thomas v. Ludwick,* 2:08-CV-14707

apartment, where they then robbed Pauline Jackson at gunpoint. Based upon this evidence, a rational jury could have determined that petitioner and his co-defendants intended to commit the home invasion and robbery at or before the time of the killing. Accordingly, petitioner is not entitled to habeas relief on his claim, because the Michigan Court of Appeals' determination that there was sufficient evidence to convict petitioner of first-degree felony murder was not unreasonable. *See Ingram v. Stovall,* No. 2010 WL 816777, * 5 (6th Cir. March 10, 2010); *See also Riley v. Berghuis,* 388 F. Supp. 2d 789, 804 (E.D. Mich. 2005); *rev'd on other grds,* 481 F. 3d 315 (6th Cir. 2007).

Finally, to the extent that petitioner challenges the credibility of the witnesses, petitioner would not be entitled to habeas relief. A reviewing court does not re-weigh the evidence or redetermine the credibility of the witnesses whose demeanor has been observed by the trial court. *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983); *Couch v. Booker,* 650 F. Supp. 2d 683, 698 (E.D. Mich. 2009); *Johnson v. Hofbauer,* 159 F. Supp. 582, 597 (E.D. Mich. 2001). Petitioner is not entitled to habeas relief on his fourth, fifth, and seventh claims.

**D. Claim # 6. The lesser included offense instruction claim.**

Petitioner next contends that the trial court erred in refusing to instruct the jury on second-degree murder as a lesser included offense to first-degree felony murder.

The United States Supreme Court has declined to determine whether the Due Process Clause requires that a state trial court instruct a jury on a lesser included offense in a non-capital case. *See Adams v. Smith,* 280 F. Supp. 2d at 717)(*citing to Beck v. Alabama,* 447 U.S. 625, 638, n. 4 (1980)). Thus, a state trial court's failure to

16

give the jury an instruction on a lesser included offense in a non-capital case is not contrary to, or an unreasonable application of, clearly established federal law as required for federal habeas relief. *Id. Beck* has been interpreted by the Sixth Circuit to mean that "the [federal] Constitution does not require a lesser-included offense instruction in non-capital cases." *Campbell v. Coyle,* 260 F. 3d 531, 541 (6th Cir. 2001). Thus, the failure of a state trial court to instruct a jury on a lesser included offense in a non-capital case is not an error cognizable in federal habeas review. *Bagby v. Sowders*, 894 F. 2d 792, 797 (6th Cir. 1990); *See also Scott v. Elo,* 302 F. 3d 598, 606 (6th Cir. 2002).

**E. Claim # 8. The cumulative errors claim.**

Petitioner lastly alleges that he is entitled to habeas relief because of cumulative error. The Sixth Circuit has noted that the United States Supreme Court "has not held that distinct constitutional claims can be cumulated to grant habeas relief." *Lorraine v. Coyle,* 291 F. 3d 416, 447 (6th Cir. 2002). Therefore, petitioner is not entitled to habeas relief on his cumulative errors claim. *Id.; See also Dorchy v. Jones,* 320 F. Supp. 2d 564, 581 (E.D. Mich. 2004); *aff'd* 398 F. 3d 783 (6th Cir. 2005).

**F. A certificate of appealability.**

A habeas petitioner must receive a certificate of appealability ("COA") in order to appeal the denial of a habeas petition for relief from either a state or federal conviction. [2] 28 U.S.C. §§ 2253(c)(1)(A), (B). A court may issue a COA "only if the applicant has

---

[2] Effective December 1, 2009, the newly created Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides

17

made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a federal district court rejects a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this standard by demonstrating that ... jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, a district court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the petitioner's claims. *Id.* at 336-37.

      The Court concludes that jurists of reason would find its assessment of the constitutional claims debatable or wrong. *See Slack*, 529 U.S. at 484-85. Any doubt regarding whether to grant a COA from the denial of a petition for federal habeas relief is resolved in favor of the habeas petitioner, and the severity of the penalty may be considered in making that determination. *See Newton v. Dretke,* 371 F. 3d 250, 253 (5th Cir. 2004). Any doubts regarding the issuance of a COA in this case should be resolved in petitioner's favor, in light of the nonparolable life sentence that he is serving. The Court thus issues petitioner a COA. Petitioner is also granted leave to proceed on appeal *in forma pauperis*, as any appeal would not be frivolous. A court

---

that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254.

*Thomas v. Ludwick,* 2:08-CV-14707

may grant *in forma pauperis* status if the court finds that an appeal is being taken in good faith. *See* 28 U.S.C. § 1915(a)(3); Fed. R.App.24 (a); *Foster v. Ludwick*, 208 F. Supp. 2d 750, 765 (E.D. Mich. 2002).

## IV. CONCLUSION

For the reasons stated above, this Court concludes that Petitioner Thomas is not entitled to federal-habeas relief on the claims presented in his petition. Accordingly, **IT IS ORDERED** that the petition for writ of habeas corpus is **DENIED WITH PREJUDICE**. (Dkt. # 1.)

**IT IS FURTHER ORDERED** that the Court issues petitioner a certificate of appealability and leave to proceed on appeal *in forma pauperis*.


S/Arthur J. Tarnow
Arthur J. Tarnow
United States District Judge

Dated:  March 29, 2010

I hereby certify that a copy of the foregoing document was served upon counsel of record on March 29, 2010, by electronic and/or ordinary mail.

S/Catherine A. Pickles
Judicial Secretary